UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____ :                          :
IDANIA CINTRON,                :
                               :
          Plaintiff,           :   Civil Action No. 07-cv-04389(FLW)
                               :
     v.                        :
                               :
SAVIT ENTERPRISES, et al.      :
                               :   OPINION
          Defendants.          :
_____ :

**WOLFSON, United States District Judge:**

Presently before the Court are Motions individually brought by Third Party Defendants Trans Union LLC ("Trans Union") and Experian Information Solutions Inc. ("Experian") (collectively "Third Party Defendants") to dismiss Defendant ACB Receivables Management's ("ACB") Third Party Complaint. In her Complaint, Plaintiff Idania Cintron ("Plaintiff") alleges that ACB violated the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"). In turn, ACB asserts as part of its Answer claims of indemnification against Trans Union and Experian for their failure to properly report Plaintiff's credit status. For the reasons that follow, Trans Union and Experian's Motions to Dismiss ACB's Third Party Complaint for indemnification are granted.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Since Third Party Defendants move to dismiss ACB's Third Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6), all facts alleged in the Third Party Complaint are assumed to be true.

Trans Union and Experian are separate consumer reporting agencies, responsible for furnishing credit information to entities such as ACB. Sometime in 2005, Plaintiff filed for Chapter 7 Bankruptcy protection. Pl.'s Compl. ¶ 9. On April 29, 2005, the bankruptcy court issued a discharge, including all alleged debts owed to Defendants. Id.[1] According to Plaintiff, Defendants were in receipt of the bankruptcy petition and were aware of the discharge and automatic stay. Id. ¶ 10. Notwithstanding, Defendants "continued to attempt to collect these alleged debt[sic] by making collection calls and mailing collection letters to Plaintiff demanding payment of a discharged debt, threatening legal action which can not lawfully be taken and failing to include the statutorily required language in their correspondence." Id. In addition, "Defendants also continued to attempt to collect this alleged debt by listing these debts as unpaid collections on Plaintiff's credit reports." Id. Plaintiff alleges, that as a consumer, as defined under the FDCPA, Defendants' actions violated numerous provisions of the FDCPA. Plaintiff alleges, inter alia, that Defendants (1) misrepresented the amount character and status of the debt(s); (2) failed to contact Plaintiff's attorney; (3) violated the bankruptcy charge; (4) abused and harassed Plaintiff; (5)

---

[1] In her Complaint, Plaintiff does not individually identify which debts are attributed to which Defendants. Rather, the Complaint summarily alleges that "the alleged debts of Defendants" were included in the issuance of discharge. For instance, Plaintiff's entire Complaint alleges Defendants collectively violated numerous provisions of the FDCPA without specifying, for instance, which Defendant "list[ed] these debts as unpaid collections of Plaintiff's credit reports." Pl.'s Compl. ¶ 10.

2

communicated credit information which Defendants knew or should have known was false; and (6) failed to inform the credit reporting agencies that the debt was disputed.  Id. ¶ 15.

Plaintiff filed this action in United States District Court for the District of New Jersey on September 13, 2007.  On September 17, 2007, Plaintiff filed an Amended Complaint.  On February 26, 2008, this Court entered a Stipulation and Order dismissing Plaintiff's Complaint as to Defendants Savit Enterprises and Financial Credit Management, LLC, individually.  ACB filed a Motion to Dismiss on February 15, 2008 which this Court denied on August 1, 2008.  On August 20, 2008, ACB filed an Answer and Third Party Complaint, alleging that Trans Union and Experian "were provided with information regarding Plaintiff. . .[and]  published false information that [ACB] continued to report Plaintiff. . .as a debtor."  ACB's Answer ¶¶ 5-6.[2]  Experian and Trans Union filed their individual Motions to Dismiss ACB's Third Party Complaint on November 25 and November 26, 2008, respectively.  For the reasons that follow, Third Party Defendants' Motions to Dismiss are granted.

## II. DISCUSSION

### A.  Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation

---

[2]In its reply papers, Experian contests ACB's allegation that Experian and Trans Union furnish information to entities such as ACB, rather, as Experian asserts, ACB is responsible for reporting information to Experian and Trans Union.  Nonetheless, the gravamen of ACB's Third Party Complaint is that Experian and Trans Union were publishing false information, which in turn, ACB used to its own detriment.

and quotations omitted). Recently, in Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

B.  **Right to Indemnification under FDCPA or the FCRA**

Initially, Third Party Defendants move to dismiss on the grounds that ACB cannot maintain a cause of action for indemnification under the FDCPA or FCRA.  In response, ACB argues that its right to indemnification arises under New Jersey common law, and as such, the FDCPA or FCRA have no bearing on its Third Party Complaint.[3]

At the outset, the question whether indemnification or contribution is available to ACB is a one of federal, not state, law.  Meyers v. Freedom Credit Union, No. 05-3526, 2007

---

[3] ACB does not allege that its right to indemnification arises under some contractual relationship with either Experian or Trans Union.

4

WL 2753172, at *7 (E.D. Pa. Sept. 21, 2007).  A party seeking contribution or indemnification under a federal statute must demonstrate that such a right arises (1) as a right created by Congress, either explicitly or implicitly; or (2) under the federal common law. Doherty v. Wireless Broadcasting Sys. of Sacramento, Inc., 151 F.3d 1129, 1131 (9th Cir. 1998).  Courts should be wary to imply a right of indemnification, guided by the principle that a statute which omits a particular remedy from its extensive enforcement mechanisms is demonstrative of Congress' intent to expressly forbid such remedial action. Conner v. Howe, 344 F. Supp. 2d 1164, 1171 (S.D. Ind. 2004).  Stated another way, "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme." Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 97 (1981). Other courts, when faced with the issue whether the FDCPA or the FCRA provides for an implied right of indemnification, have found that both laws create comprehensive regulatory schemes, leaving no room for a court to infer a right to contribution or indemnification. See Meyers, 2007 WL 2753172, at *7; Conner, 344 F. Supp. 2d at 1171 (finding no implied right of indemnification in either the FDCPA or the FCRA); see also Bowers v. NCAA, 346 F.3d 402, 425 (3d Cir. 2003) (cautioning that courts should not find an implied right to contribution where the federal statute at issue contains a comprehensive remedial scheme).  It is also clear, as other courts have noted, that neither the FCRA, nor its sister act, the FDCPA, create an express cause of action for indemnification or contribution. See, e.g., McMillan v. Equifax Credit Information Services, Inc., 153 F. Supp. 2d 129, 132 (D. Conn. 2001).

5

Similarly, the federal common law, as interpreted by other courts, does not authorize a right to indemnification under the FCRA or FDCPA. <u>See</u>, <u>e.g.</u>, <u>Beringer v. Standard Parking O'HARE Joint Venture</u>, No. 07-5027, 2008 WL 4890501, at *3 (N.D. Ill. Nov. 12, 2008); <u>In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.</u>, No. 05-7097, 2008 WL 630883, at *3 (N.D. Ill. Mar. 5, 2008); <u>Nelson v. Equifax Information Services, LLC</u>, 522 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007). A right to indemnification or contribution arises under the federal common law if such a cause of action would implicate a "uniquely federal interest" or, alternatively, "Congress has given the courts the power to develop substantive law." <u>Texas Industries, Inc. v. Radcliff Materials, Inc.</u>, 451 U.S. 630, 640 (1981). The federal common law, however, rarely provides for a right of contribution or indemnification. <u>McSherry v. Capital One FSB</u>, 236 F.R.D. 516, 522 (W.D. Wash. 2006). As to this inquiry, the Court finds the <u>Meyer</u> court's analysis particularly convincing. In <u>Meyer</u>, the district court held that under the FCRA, a third party plaintiff could not seek indemnification from a company that sent out letters incorrectly notifying creditors of adverse actions against a person who later sued the third party plaintiff. In dismissing the third party complaint, the Court found that the federal common law did not provide for a right of contribution or indemnification under the FCRA:

> As to federal common law: A claimed cause of action for contribution or indemnity is not cognizable under federal common law unless such a cause of action would implicate a "'uniquely federal interest,'" <u>Tex. Indus., Inc. v. Radcliff Materials, Inc.</u>, 451 U.S. 630, 642, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) ( quoting <u>Banco National de Cuba v. Sabbatino</u>, 376 U.S. 398, 426, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964)), or unless Congress can be deemed to have delegated to the courts the power to "create governing rules of law." <u>Id.</u> Neither is the case here. Much as in <u>Texas Industries</u>, the only federal interest in contribution or

6

>indemnification is the vindication of federal statutory rights, but because that interest "does not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority," it is insufficient to ground a federal common law cause of action. Id. Similarly, FCRA contains no delegation to the courts of the power to create additional or supplementary liabilities.

Meyers, 2007 WL 2753172, at *7.

In the present case, ACB's assertion that its claims for indemnification arise under New Jersey's common law is simply unavailing. Not surprisingly, ACB is unable to identify any provision within the FDCPA or FCRA that establishes, either explicitly or implicitly, a right to indemnification. To that end, the Court's conclusion is amply supported by several other courts, including Meyer, that have declined to extend the FCRA or FDCPA's already robust remedial measures to include a right to indemnification. As stated above, "the FDCPA provides very specific and articulated rights and remedies, leading one to conclude that if Congress had intended an explicit right to contribution or indemnity, it would have included it in the statute. There is no express right of action for either contribution or indemnity in. . .the FDCPA." Irwin v. Mascott, 94 F. Supp. 2d 1052, 1058 (N.D. Cal. 2000); see also Crescent Wharf & Warehouse Co. v. Barracuda Tanker Corp., 696 F.2d 703, 706 (9th Cir.1983) (finding that in the case of a statute with comprehensive regulatory measures, the absence of a specific right creates a rebuttable presumption that Congress intended not to create such a right under the statute).

Moreover, federal common law, as other courts have found, does not give rise to a right of contribution or indemnification under the FDCPA or the FCRA, nor has ACB argued otherwise. Indeed, the Court can safely assume, given the exhaustive remedial

measures as set forth in both statutes, that Congress' omission of a right to indemnification for non-consumers, such as ACB, was not unintentional.[4] While New Jersey generally permits a party to seek indemnification where it is without fault, Promaulayko v. Johns Manville Sales Corp., 116 N.J. 505, 511 (1989), ACB cannot assert New Jersey's right to indemnification in an effort to eschew Congress' decision to preclude a right of indemnification or contribution as remedies under the FCRA or FDCPA. Accordingly, Experian and Trans Union's Motions to Dismiss ACB's Third Party Complaint are granted.

### III. CONCLUSION

For the foregoing reasons, Experian and Trans Union's Motions to Dismiss ACB's Third Party Complaint are granted.


Dated April 8, 2009            s/ Freda L. Wolfson
                               The Honorable Freda L. Wolfson
                               United States District Judge

---

[4] As noted by Congress, the FCRA was enacted to protect consumers, especially in light of the fact that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers," creating "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3)-(4). As a result, Congress sought to adopt reasonable procedures to ensure fair and equitable treatment of the consumer.  15 U.S.C. § 1681(b).  In McSherry, the district court observed that Congress, in passing the FCRA, had no interest "in 'softening' the blow for joint wrongdoers," but rather seeking to provide consumers relief against consumer reporting agencies.  236 F.R.D. at 522 (finding that the FCRA was not intended to provide consumer reporting agencies with the ability to seek indemnification from a joint wrongdoer).

Likewise, the FDCPA provides "a remedy for consumers who have been subjected to abusive, deceptive, or unfair debt collection practices by debt collectors." Pollice v. National Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000) (citing Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir. 1987)).